UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **JANE DOE #1** and **JANE DOE #2** *Plaintiffs* vs. **CHARLES SCOTT CRAVENS,** *in his individual and official capacity as Sheriff of Fentress County Tennessee,* and **FENTRESS COUNTY, TENNESSEE** *Defendants* | NO. _____ CAUSES OF ACTION: Civil Rights Violations *JURY TRIAL DEMANDED* |

# COMPLAINT

1.  Plaintiffs Jane Doe #1 and Jane Doe #2 bring this action for damages and declaratory relief pursuant to 42 U.S.C. § 1983 and Tenn. Code Ann. 8-8-302 against Defendant Charles Scott Cravens, former Sheriff of Fentress County, and Defendant Fentress County, Tennessee.

## PARTIES

2.  Plaintiff **Jane Doe #1** is a citizen and resident of Morgan County, Tennessee. At all times pertinent hereto, **Jane Doe #1** was an inmate at the Fentress County Jail under the care, custody, and control of Defendant Cravens. **Jane Doe #1** is no longer incarcerated.

3. Plaintiff **Jane Doe #2** is a citizen and resident of Morgan County, Tennessee. At all times pertinent hereto, **Jane Doe #2** was an inmate at the Fentress County Jail under the care, custody, and control of Defendant Cravens. **Jane Doe #2** is no longer incarcerated.

4. Defendant **Fentress County** is a political subdivision of the State of Tennessee.

## JURISDICTION AND VENUE

5. This action arises out of the mistreatment suffered by the Plaintiffs at the hands of the Defendants in Fentress County, Tennessee.

6. This action arises under the United States Constitution and under the laws of the United States of America, particularly under the provisions of the Eighth and Fourteenth Amendments of the United States Constitution, and particularly under the Civil Rights Act, codified at 42 U.S.C. § 1983 *et seq.*, as well as Tenn. Code Ann. 8-8-302.

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343, and supplemental jurisdiction over the state claim pursuant to 28 U.S.C. § 1367.

8. Venue lies in this District pursuant to 28 U.S.C. § 1391(b)(2) because all of the events related to this case occurred in this District.

## FACTUAL BACKGROUND

9. Defendant Cravens was the elected Sheriff of Fentress County, Tennessee. Cravens was elected Sheriff in or about August 2014, having been previously elected to serve as Sheriff from in or about September 2006 through in or

about August 2010.  On or about April 14, 2017, Cravens resigned, effective April 28, 2017.

10. As Sheriff of Fentress County, Cravens was the chief law enforcement officer in charge of the Fentress County Sheriff's Department ("FCSD"), which employs deputies, correctional officers, and support staff.  The FCSD is located in Jamestown, Tennessee, the county seat of Fentress County, in the Middle District of Tennessee.  Among other things, the FCSD maintains the operations of the Fentress County Jail, a correctional facility housing approximately 147 male and female inmates.

11. Jane Doe #1 is a female person who was incarcerated in the Fentress County Jail beginning in or about June 2016 and ending in or about November 2016.

12. Jane Doe #2 is a female person who was incarcerated in the Fentress County Jail beginning in or about May 2016 and ending in or about April 2017.

13. While incarcerated at the Fentress County Jail, the Sheriff authorized and oversaw the maintenance of a vegetable garden on the premises of the jail that was maintained by a group of female inmates referred to as the "Garden Girls."

14. The "Garden Girls" were organized into smaller groups responsible for particular garden-related tasks on set dates and times.

15. Sheriff Cravens ran the Fentress County Jail as a personal fiefdom, only complying with local, state, and federal law insofar as it was convenient for him.

16. He maintained a reputation for bestowing gratuity upon female inmates that were flirtatious with him.  However, he also maintained a reputation for violence

and capriciousness against inmates who opposed him.[1]  Jane Doe #1 and Jane Doe #2 were aware of Sheriff Cravens' reputation from the respective beginnings of their incarcerations at the Fentress County Jail.

17.     Many of the Garden Girls flirted with Sheriff Cravens in hopes that he would confer favors, including but not limited to money on the jail commissary, cigarettes, and other benefits, upon them.

18.     Jane Doe #1 and another Garden Girl, referred to hereinafter as "Unnamed Garden Girl," were in the same Garden Girl sub-group and, like the other Garden Girls, flirted with Sheriff Cravens.

19.     These flirtations included the statement that Jane Doe #1 and Unnamed Garden Girl should engage in group sex when they are released.

20.     On or about August 15, 2016, Sheriff Cravens explained to Jane Doe #1 and another female inmate (referred to herein as "Unnamed Garden Girl") that he had a location in mind – a trailer on his private property in unincorporated Grimsley, Tennessee – at which the three could engage in group sex.

21.     Jane Doe #1 was surprised at the dramatic escalation from flirtation to requests for actual sex.

22.     Life in the Fentress County Jail is tedious and difficult.  The banality and paucity of this existence amplifies the significance of small favors like cigarettes, warm clothes, family visits, and phone calls.  It was precisely these enticements Sheriff Cravens used to coerce Jane Doe #1 and Jane Doe #2.

---

[1] An example of this violence includes Cravens' bashing the head of a handcuffed inmate in November 2016, which led to one of Cravens' criminal convictions.

23. Due to these temptations and out of fear for what may happen should they refuse the most powerful law enforcement official in Fentress County, Jane Doe #1 acquiesced.

24. The three agreed that they would tell anyone who asked that they needed to haul cornstalks away from the jail, which required them leaving the jail grounds together.

25. The three actually did leave the jail and dispose of cornstalks, but they also stopped at Sheriff Cravens' trailer where he directed the women to engage in group sexual activity that included oral and vaginal sex between Sheriff Cravens and Jane Doe #1.

26. On or about August 14, 2016, Sheriff Cravens gave his personal cell phone number for the use of Jane Doe #1, Jane Doe #2, and Unnamed Garden Girl by which the inmates with whom he was having sex could call in requests for favors. Jane Doe #1 and Jane Doe #2 took advantage of these favors.

27. Approximately one week later, on or about August 22, 2016, Jane Doe #1 and Unnamed Garden Girl left the jail under the premise of disposing of cornstalks from the jail. Sheriff Cravens permitted Jane Doe #1 to make a phone call while he vaginally penetrated Unnamed Garden Girl front of her.

28. On or about August 29, 2016, Sheriff Cravens demanded that Jane Doe #1 and Unnamed Garden Girl make another sex trip away from the jail in a County pickup truck.

29. On this trip, Jane Doe #1 and Unnamed Garden Girl requested the Sheriff take them to Dairy Queen to get ice cream, and he obliged. He then took them down a dirt road on the outskirts of Jamestown. This time, Unnamed Garden Girl did not participate. Because the Sheriff expected sex with at least one of the girls, Jane Doe #1 submitted herself on the tailgate of the County vehicle. Jane Doe #1 did not want to engage in in this or any other sexual relations with the Sheriff.

30. Because she had already accepted favors offered by Sheriff Cravens and feared the consequences of rebuking him, Jane Doe #1 continued to acquiesce to the Sheriff's sexual demands and she continued to use his cell phone to call in favors.

31. During the month of September 2016, Sheriff Cravens summoned Jane Doe #1 to his office for sex on two separate occasions. On both occasions, Sheriff Cravens orally and vaginally penetrated Jane Doe #1. Due to Jane Doe #1's fear of the Sheriff himself, as well as the fear that she would be in trouble if anyone found out about the arrangement, she did not resist the Sheriff's advances and requests for sex.

32. On or about late October 2016, the temperature began to get cold after the sun went down. Jane Doe #1 and Jane Doe #2 needed jackets to stay warm.

33. Sheriff Cravens offered to get them jackets in exchange for group sex at his trailer. Jane Doe #1 and Jane Doe #2 acquiesced, and the Sheriff penetrated them vaginally and orally.

34. Neither Jane Doe #1 nor Jane Doe #2 actually wanted to have sex with the Sheriff. However, both were afraid of what the Sheriff would do to them if they

Page **6** of **13**

Case 2:17-cv-00049   Document 1   Filed 08/22/17   Page 6 of 13 PageID #: 6

did not continue to participate in the arrangement. They were also cold, and needed the jackets.

35. In or about November 2016, when Jane Doe #1 was being released from custody of the Fentress County Jail, Sheriff Cravens took Jane Doe #1 from the Fentress County Jail in the same County truck driven during previous sex trips.

36. During the trip to Jane Doe #1's home, Sheriff Cravens interrogated her about maintaining the secrecy of their sexual activities and elicited promises that she would continue to have sex with him now that she was being released from jail.

37. Sheriff Cravens stopped then stopped truck and demanded sex. Jane Doe #1 complied, and she was penetrated orally and vaginally. He then drove to Jane Doe #1's home and dropped her off.

38. Jane Doe #1 never again engaged in sexual activity with the Sheriff following her release from the Fentress County Jail.

39. Following each plaintiff's first sexual act with the Sheriff, Jane Doe #1 and Jane Doe #2 felt that they could not refuse the Sheriff and that they must continue because the Sheriff had complete control over their lives in the Fentress County Jail.

40. Throughout the entire period beginning in or about August 2016 and ending in or about March 2017, Sheriff Cravens engaged in numerous sexual encounters with Jane Doe #2. During this time, Jane Doe #2 also requested and received favors by using the Sheriff's cellular voicemail.

41.     Jane Doe #2 engaged in oral and/or vaginal sex with Sheriff Cravens on at least six (6) occasions, with at least five (5) occurring since October 2016 and the last occasion occurring in or about March 2017.  Jane Doe #2 did not want to have sex with the Sheriff, but like Jane Doe #1, she felt that she was "in too deep" after the first encounter and that no good could come of rebuking the Sheriff.

42.     Jane Doe #1 and Jane Doe #2 accepted the favors offered by the Sheriff, but their participation in each and every one of the sexual encounters was coerced by the power, prestige, and authority of the office of the Sheriff of Fentress County, along with the Sheriff's reputation for violence and capriciousness against those who opposed him.

43.     While, at the inception of the sexual arrangement, steps were taken to conceal the activity between Jane Doe #1, Jane Doe #2 and the Sheriff, upon information and belief, other officers at the Fentress County Sheriff's Department were aware that the Sheriff was having sex with female inmates.

44.     Sheriff Cravens ultimately carried out his sexual abuse of Jane Doe #1 and Jane Doe #2 in an open and nonchalant manner.  Trips were taken to the Sheriff's trailer without any cornstalks to dispose and members of the public, including Jamestown Dairy Queen employees, saw the Sheriff riding alone with Jane Doe #1 and other female inmates.

45.     The Sheriff would order other employees of the Fentress County Sheriff's department to cater to Jane Doe #1 and Jane Doe #2, making both Plaintiffs feel further beholden to the Sheriff.

46. Transforming the clandestine abuse into an "open secret" further assisted in the Sheriff's coercion of Jane Doe #1 and Jane Doe #2.

47. It seemed to Jane Doe #1 and Jane Doe #2 as though no one cared to stop the Sheriff from sexually abusing the female inmates of the Fentress County Jail.

48. On the trips away from the jail, Jane Doe #1 and Jane Doe #2 were completely under the control of the Sheriff. They were effectively the Sheriff's slaves, and he treated them as such.

49. Jane Doe #1 and Jane Doe #2 believed that no one could help them and that they would be the ones to get in trouble if they complained about the Sheriff.

50. Due to Jane Doe #1 and Jane Doe #2's pre-existing mental health problems, including substance abuse disorder, and their incarceration, they were of such mental and emotional frailty as to be susceptible to the Sheriff's devises and the Sheriff violated the position of trust and authority he held over the defendants, such that punitive damages are appropriate.

51. Both plaintiffs are in serious need of counseling and treatment as a result of the abuse inflicted by Sheriff Cravens, but due to their poverty, their ability to pursue this treatment has been limited.

# COUNT I:
### VIOLATION OF JANE DOE #1 AND JANE DOE #2'S RIGHT TO BE FREE FROM SEXUAL ABUSE
### IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION
### (42 U.S.C. § 1983)
### (DEFENDANT CRAVENS AND DEFENDANT FENTRESS COUNTY)

52. Plaintiffs hereby incorporate all allegations above as if restated herein verbatim.

53. Sexual abuse of an inmate (already adjudicated guilty and serving a sentence) by an officer violates the prohibition against cruel and unusual punishment of Eighth Amendment to the United States Constitution.

54. Sexual abuse of an inmate (while that inmate is a pretrial detainee) by an officer violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

55. Sheriff Cravens acted under color of law in all acts described above. He was charged with the oversight of Jane Doe #1 and Jane Doe #2 as inmates of the Fentress County Jail.

56. Sheriff Cravens used a Fentress County vehicle to facilitate his sexual abuse of the Plaintiffs and other inmates.

57. Sheriff Cravens used his office as both a "carrot" (by providing favors only a law enforcement official could provide to inmates) and a "stick" (by implied threats of official retribution and demonstrations of violence against other inmates) for the coercion of Jane Doe #1 and Jane Doe #2 into sex.

58. Sheriff Cravens was, at all times relevant to this case, the ultimate policymaker for the Fentress County Sheriff's Department.

59. Sheriff Cravens' actions may fairly be said to represent the official policy, practices, and/or customs of Fentress County. One custom was that the Sheriff is entitled to sex from female inmates.

60. Sheriff Cravens' extensive sexual abuse of Jane Doe #1 and Jane Doe #2 serves no legitimate penological purpose.

61. Sheriff Craven's extensive sexual abuse of Jane Doe #1 and Jane Doe #2 was the product of coercion through the power and authority of the office of Sheriff of Fentress County.

62. Upon information and belief, deputy sheriffs serving under Sheriff Cravens knew about his sex with the plaintiffs but did nothing to stop it.

63. As a result of Sheriff Cravens' unlawful conduct, Jane Doe #1 and Jane Doe #2 have suffered

    a. Emotional distress and anxiety, including but not limited to the constant worry and unease resulting from the public knowledge of the Plaintiffs' sex with the Sheriff, along with the constant fear of reprisal that persists to the present date;

    b. Shame and humiliation that the Plaintiffs were sexually penetrated and abused by the Sheriff, and the dread that other community members may ostracize them as a result of the Sheriff's sexual abuse;

    c. Sleeplessness and depression; and

d. Loss of enjoyment of life because of the memories of the unspeakable acts the Sheriff perpetrated upon them.

## COUNT II:
### SEXUAL ASSAULT AND BATTERY
### (TENN. CODE ANN. 8-8-302)
### (DEFENDANT FENTRESS COUNTY)

64. Plaintiffs hereby incorporate by reference all paragraphs above as if restated herein verbatim.

65. Defendant Fentress County is a county of the State of Tennessee with its county seat in Jamestown.

66. At all dates and times mentioned above and herein, Defendant Cravens' directed, demanded, and perpetrated the above-described sexual acts under his authority as the elected Sheriff and the ultimate policymaker for the Fentress County Sheriff's Department.

67. All above-described sexual acts between Sheriff Cravens and Jane Doe #1 and Jane Doe #2 were the product of coercion and were thus nonconsensual.

68. Fentress County is liable for these actions pursuant to Tenn. Code Ann. § 8-8-302.

## REQUEST FOR RELIEF

**WHEREFORE**, the Plaintiffs request judgment against Charles Cravens and Fentress County as follows:

69. That the Defendants answer this complaint within the time provided by law.

70. That this cause be tried by a jury.

71. That a judgment enter for Jane Doe #1 and Jane Doe #2 on each count.

72. That the Plaintiffs be awarded all damages to which it may appear they are entitled by the proof submitted in this cause, including nominal, compensatory, and punitive damages.[2]

73. That the Plaintiffs be awarded attorney's fees pursuant to 42 U.S.C. § 1988, plus compensation for any expert fees and other costs reasonably expended in pursing this matter.

74. That the Plaintiffs be awarded pre- and post-judgment interest.

75. That costs be taxed to the Defendants.

76. That the Plaintiffs be awarded all other relief to which it may appear she is entitled, the interests of justice demanding it.


Respectfully submitted,

_____
WESLEY B. CLARK, #32611
**DOWNTON CLARK, PLLC**
2706 LARMON AVENUE
NASHVILLE, TN 37204
T: 615-984-4681 / F: 615-514-9674
wesley@downtonclark.com

---

[2] Punitive damages are requested only against Charles Cravens, as such damages are not available against Fentress County.