UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| JANE DOE #1 and JANE DOE #2, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 2:17-cv-00049 |
| | ) Chief Judge Crenshaw |
| CHARLES SCOTT CRAVENS, | ) |
| in his individual and official capacity as | ) |
| Sheriff of Fentress County, Tennessee; | ) |
| and FENTRESS COUNTY, | ) |
| TENNESSEE, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Sued because then-Sheriff Charles Scott Cravens allegedly had sexual relations with several jail inmates, Fentress County, Tennessee has moved to dismiss all claims against it. (Doc. No. 25). Two of the inmates, Jane Doe #1 and Jane Doe #2, filed this suit, and oppose the Motion. (Doc. No. 29). For the reasons that follow, the Motion will be granted in part and denied in part.

**I. Discussion**

The Amended Complaint is in six counts. The first four are federal claims brought under 42 U.S.C. § 1983. Count I, directed at Sheriff Cravens, alleges violations of the right to bodily integrity and to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments. Counts II and III allege the same violations under the same constitutional amendments against Fentress County. Count IV seeks to hold Fentress County liable under a "state created danger" theory for the alleged deprivation of Plaintiffs' Fourteenth Amendment right to due process.

Counts V and VI are state law claims brought under Tenn. Code Ann. § 8-8-302. Both are against Fentress County, with Count V alleging sexual assault and battery, and Count VI alleging

the intentional and reckless infliction of emotional distress.

## A. Federal Claims

Fentress County moves to dismiss the federal claims because there is no respondeat superior liability under Section 1983. This is in accord with Monell v. Department of Social Services of New York, 436 U.S. 658, 691 (1978), wherein the Supreme Court stated that "a municipality cannot be held liable solely because it employs a tortfeasor[.]" In other words, "under § 1983, local governments are responsible only for 'their own illegal acts.' . . . They are not vicariously liable under § 1983 for their employees' actions." Connick v. Thompson, 131 S.Ct. 1350, 1359 (2011) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986)). Therefore, "a municipality is liable under § 1983 only if the challenged conduct occurs pursuant to a municipality's 'official policy,' such that the municipality's promulgation or adoption of the policy can be said to have 'cause[d]' one of its employees to violate the plaintiff's constitutional rights." D'Ambrosio v. Marino, 747 F.3d 378, 386 (6th Cir. 2014) (quoting Monell, 436 U.S. at 692).

"Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick, 131 S.Ct. at 1359. Thus, to state a municipal liability claim, a plaintiff must adequately allege "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance [of] or acquiescence [to] federal rights violations." Burgess v. Fischer, 735 F.3d 462, 478 (6th Cir. 2013); accord Boulton v. Swanson, 795 F.3d 526, 531 (6th Cir. 2015).

In moving to dismiss the federal claims, Fentress County relies on a number of cases that

hold a municipality need not train its officers to refrain from raping or sexually abusing individuals in their custody or control. For example, in Andrews v. Fowler, 98 F.3d 1069, 1077 (8th Cir. 1996), the Eighth Circuit stated that "[i]n light of the regular law enforcement duties of a police officer, we cannot conclude that there was a patently obvious need for the city to specifically train officers not to rape young women." Relying on that case and others, the Eastern District of Tennessee in Campbell v. Anderson County, 695 F. Supp. 2d 764, 774 (E.D. Tenn. 2010) similarly observed that "[r]efraining from raping women in police custody is so obvious that even if Anderson County were silent about such conduct, it would not give rise to a constitutional violation," and that "no specific training [i]s necessary to inform officers not to rape or sexually assault women in their custody."

Even though both cases were decided in the context of a motion for summary judgment and not on a motion to dismiss, the Court agrees with their underlying rationale. This does not end the inquiry, however, because Plaintiffs' failure to train claim is much broader. Among other things, they claim that Fentress County failed to train and supervise its deputies regarding (1) "correctional officer interactions with female prisoners"; (2) "the known risks of sexual abuse that are present in all correctional facilities"; and (3) the "duty to protect inmates from sexual abuse by guards, officers, and authority figures." (Doc. No. 22-1, Amended Complaint ¶ 47). Plaintiffs also claim that Fentress County failed to enact or enforce a policy that would prohibit allowing a single member of the jail to transport a prisoner. Regardless, the primary allegation here is that the chief law enforcement and "ultimate policymaker of the Fentress County Sheriff's Department" (id. ¶ 5) had sexual relations with at least two individuals under his control, not that a reserve officer (Campbell) or a patrol officer (Andrews) engaged in such conduct.

Fentress County also relies on cases like Wooten v. Logan, 92 F. App'x 143 (6th Cir. 2004)

3

and Roe v. City of Waterbury, 542 F.3d 31 (2d Cir. 2008). While those cases involved policymakers, they, too, were decided on summary judgment. Further, neither is controlling (Wooten is an unpublished decision and Roe is out-of-circuit), and both are readily distinguishable.

In Wooten, Charlie Logan, the Sheriff of Pickett County, Tennessee, while in uniform and driving a squad car, stopped a vehicle driven by Peggy Dale in which plaintiff, a mentally handicapped minor, was riding. Thereafter, in accordance with a preconceived plan, Logan and Dale raped the minor.

Recognizing that "[u]nder appropriate circumstances, a single act by a local government official can constitute the government's 'official policy,'" specifically "where the official possesses final authority to establish municipal policy with respect to the action ordered," Wooten, 92 F. App'x at 146, a split panel of the Sixth Circuit found plaintiff's evidence insufficient to warrant a jury trial on her claims against Pickett County. The majority wrote:

> Fatally, Wooten has not demonstrated that Logan's conduct represented the "official policy" of the County, as she has not shown that Logan was acting in a policymaking capacity when he detained and assaulted her. Logan conspired with a non-employee to commit a felonious act, and his conduct cannot conceivably be characterized as exercising a power to set policy. Moreover, though he allegedly used his "blue lights and police lights" to pull over Dale's car, and utilized his "uniform, badge, and gun" to effectuate the rape, Logan acted in the guise of a patrol officer making a traffic stop–not as chief law enforcement officer.
>
> Given these alleged facts, Wooten can state a claim against the County only if every "law enforcement" activity (*e.g.*, stop, arrest, etc.) by a sheriff (or other chief law enforcement official)–whether a matter of official business or a misuse of power to advance a private agenda–represents the "official policy" of the local government. Such a rule would contravene Pembaur's attempt "to distinguish acts of the *municipality* from acts of employees of the municipality." Pembaur, 475 U.S. at 469, 106 S.Ct. 1292 (emphasis in original), and would institute the doctrine of respondeat superior. Accordingly. Logan's conduct cannot represent "official policy," and the County is not liable for Logan's conduct.

Id. at 146-7 (footnote omitted).

4

Important to the court's decision in Wooten was the fact that Sheriff Logan was not acting in a policy making role when he raped the minor, but instead was "act[ing] in the guise of a patrol officer." Id. at 146. This is confirmed by the Sixth Circuit distinguishing Bennett v. Pippin, 74 F.3d 578 (5th 1996) – a Fifth Circuit case also involving alleged rape by a sheriff – on the grounds that "[i]n Bennett the sheriff was acting as sheriff and indeed boasted, 'I can do what I want. I'm the Sheriff[,]'" whereas, in Wooten, "the sheriff abused his power in a way that any lower level law enforcement officer could abuse his power." Id. at 270 n.4.[1]

The allegations in the Amended Complaint, which must be accepted as true and construed in Plaintiffs' favor, Mills v. Barnard, 869 F.3d 473, 480 (6th Cir. 2017), go far beyond alleging an abhorrent tortious act that could be committed by a rank a rank and file road deputy. Quite the contrary, Plaintiffs allege that Sheriff Cravens "ran the Fentress County Jail as a personal fiefdom, only complying with local, state, and federal law insofar as it was convenient for him." (Doc. No. 22-1 Amended Complaint ¶ 16). He also allegedly "maintained a reputation for bestowing gratuity upon female inmates that were flirtatious with him," while at the same time "maintained a reputation for violence and capriciousness against inmates who opposed him." (Id. ¶ 17). To secure sexual favors, Sheriff Cravens allegedly doled out "small favors like cigarettes, warm clothes, family visits, and phone calls." (Id. ¶ 23).

---

[1] In her dissent, Judge Karen Nelson Moore found the majority's distinction of Bennett to be unnecessary and "unconvincing; the importance of Logan's position as sheriff is his ability to create policy. Whether that policy allows the abuse only of his office, or of all law-enforcement offices, is irrelevant. It is not the greater power of the sheriff to force sexual acts from the citizenry that matters; it is the greater power of the sheriff to set the policy of the municipality to allow such reprehensible acts to happen under the color of state law that is at issue." Id. at 148.

Interestingly, even though Wooten was decided more than fourteen years ago, it has not been cited by the Sixth Circuit or any other court of appeals.

Plaintiffs further assert that Sheriff Craven's misconduct was widely known, and even discussed "openly [in] public forums." (Id. ¶ 54). He allegedly had sex with Jane Doe # 1 in his office at the jail. Other times, he took inmates from the jail in a county truck to his trailer where he and the inmates would engage in sex. (Id. ¶¶ 26, 29). On a least one occasion, this was preceded by a stop at the local Dairy Queen for some ice cream. (Id. ¶ 30). On some occasions, Sheriff Cravens was seen by members of the public riding alone with jail inmates, while other times "[c]ounty deputies and employees facilitated the Plaintiffs' abuse by transporting plaintiff to locations within and outside the jail where the deputies and employees left the Plaintiff alone with Defendant Cravens for his sexual gratification." (Id. ¶¶ 50, 51).

Further, Plaintiffs allege that Sheriff Craven "routinely instructed employees of the Fentress County Sheriff's department to bring cigarettes and other favors to Jane Doe # 1 and Jane Doe # 2, in furtherance of his grooming the inmates for further sexual predation." (Id. ¶ 53). Guards would also joke about the escapades by, for example, telling an inmate, "You better brush your teeth and get that taste out of your mouth" upon [her] return from periods of isolation with Defendant Cravens." (id. ¶ 44).

Plaintiffs' allegations that Sheriff Cravens ran a "fiefdom" and "ultimately carried out his sexual abuse of Jane Doe # 1 and Jane Doe # 2 in a relatively open and nonchalant manner," (id. ¶ 49) is more akin to the sheriff's statement in Bennett that, "I'm the sheriff and I'll do what I want," than it is to the traffic stop and rape in Wooten, egregious as it was. As such, Wooten does not support dismissal of Plaintiffs' Amended Complaint.

Neither does Roe. There, the Mayor of Waterbury, Connecticut had sexual intercourse with minors in his office, home, and a police vehicle. He also used a city-owned cellphone to arrange

6

rendezvous. Affirming the grant of summary judgment in favor of the city, the Second Circuit observed that "[w]hether an official has final policymaking authority is a legal question, determined on the basis of state law," with "the critical inquiry" being "not whether an official generally has final policymaking authority; rather, the court must specifically determine whether the government official is a final policymaker with respect to the particular conduct challenged in the lawsuit." 542 F.3d at 37. The Second Circuit found that "the actions taken by [the Mayor] were in an area in which he was not a policymaker," and he "had no authority to make policy authorizing, condoning of promoting the sexual abuse of children." Id.. at 40. This was different, the Second Circuit explained, from cases in which "the courts predicated municipal liability on the fact that the municipalities had officially vested the actors with the authority to carry out the actions causing the civil rights violations." Id.

The Supreme Court has stated that it is the "court's task ... to identify those officials or governmental bodies who speak with final policymaking authority" for the municipal entity whose action is alleged to have caused the constitutional violation at issue. McMillian v. Monroe Cnty., 520 U.S. 781, 784–85 (1997). Under Tennessee law, "[it] is the sheriff's duty to . . . [t]ake charge an custody of the jail of the sheriff's county, and of the prisoners therein," Tenn Code Ann. § 8-8-201(a)(3), and "it is generally accepted that the sheriff is the final policymaker over the operation of a county jail," Freeman v. Weatherford, No. 3:12-CV-266, 2012 WL 2344633, at *5 (M.D. Tenn. June 20, 2012) (collecting cases). The allegations in the Amended Complaint, only a portion of which were recited above, are more than sufficient to establish a plausible claim that, at Sheriff Cravens' jail, there existed "a custom of tolerance or acquiescence of federal rights violations" Burgess, 735 F.3d at 478, and "practices so persistent and widespread as to practically have the force

7

of law," Connick, 131 S.Ct. at 1359, so as to warrant holding Fentress County liable for his actions. Accordingly, Plaintiffs federal claims will not be dismissed.

**B. State Law Claims**

As noted at the outset, Plaintiffs' state law claims for assault and battery, and the intentional or negligent infliction of emotional distress are brought exclusively under Tenn Code Ann. § 8-8-302. That statute provides:

> Anyone incurring any wrong, injury, loss, damage or expense resulting from any act or failure to act on the part of any deputy appointed by the sheriff may bring suit against the county in which the sheriff serves; provided, that the deputy is, at the time of such occurrence, acting by virtue of or under color of the office.

Tenn. Code Ann. § 8-8-302.

Because the statute speaks in terms of the act or failure to act on the part of a *deputy*, Fentress County moves to dismiss because only Sheriff Cravens is named as a defendant. However, "Tennessee law holds that a county may be liable under § 8–8–302, for the acts of its deputies even if the deputies are not defendants in the lawsuit." Wilson v. Morgan, 477 F.3d 326, 344 (6th Cir. 2007) (citing McGee v. Wilson County, 574 S.W.2d 744, 745 (Tenn. Ct. App.1978)).

Alternatively, Fentress County argues that it is immune from suit on the state law claims pursuant to the Tennessee Governmental Tort Liability Act ("TGTLA" or "GTLA"), Tenn. Code Ann. § 29-20-201, *et. seq.* Plaintiffs did not respond to this argument.

The TGTLA "codif[ies] the general common law rule that 'all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities,' Tenn.Code Ann. § 29–20–201(a), subject to statutory exceptions in the Act's provisions." Limbaugh v. Coffee Med. Ctr., 59 S.W.3d 73, 79 (Tenn. 2001). "Injuries that 'arise[ ] out of . . . civil rights' are one such exception, that is, sovereign immunity continues to apply in those

8

circumstances." Johnson v. City of Memphis, 617 F.3d 864, 872 (6th Cir. 2010) (quoting Tenn. Code Ann. § 29-20-105). "This include[s] claims arising under 42 U.S.C. § 1983 and the United States Constitution." Id.

In Campbell, for example, plaintiff brought federal constitutional claims under 42 U.S.C. § 1983, as well as a number of state law claims after she was allegedly sexually assaulted by Gerald Graham, an Anderson County reserve deputy. The court found that Anderson County was immune from suit on the state law claims, writing:

> Campbell's tort claims of false imprisonment, assault and battery, intentional infliction of emotional distress, and negligence brought against the County under Tennessee law are predicated on the alleged violation of her civil rights by Graham. The contention that former Reserve Deputy Graham committed false imprisonment, assault and battery, and intentional infliction of emotional distress clearly arise out of and directly flow from the allegations that he deprived Campbell of her civil rights by sexually assaulting her. Because Campbell asserts her claims against the County in the context of a civil rights case, her alleged injuries arise out of "civil rights" and the County is entitled to immunity from suit on these claims pursuant to the "civil rights" exception in Tenn.Code Ann. § 29–20–205(2).
>
> Although Campbell may seek to circumvent or avoid the County's immunity from suit under § 29–20–205(2) by couching some of her civil rights claims against the County in the guise of negligence, this strategy fails. The underlying acts which Campbell alleges to be negligent are by their very nature the type of conduct one usually associates with intentional torts (false imprisonment, assault and battery, intentional infliction of emotional distress). Campbell's negligence claim is predicated on intentional tortious conduct involving the violation of her civil rights by employees of the County. Based on the facts and circumstances of this case, the court see no reason why the County should not have immunity from suit under the "civil rights" exception in Tenn. Code Ann. § 29–20–205(2).

695 F. Supp.2d at 778; see also Moses v. Oldham, No. 217CV02692JTFDKV, 2017 WL 6209704, at *6 (W.D. Tenn. Dec. 8, 2017) (dismissing state law claims against county for malicious prosecution, false imprisonment, abuse of process, conspiracy, and intentional infliction of emotional distress because they were covered by civil rights exception). Further, even though the

9

Tennessee Supreme Court has held that a governmental entity does not retain immunity for negligent infliction of emotional distress under the TGTLA, Sallee v. Barrett, 171 S.W.3d 822 (Tenn. 2005), that holding does not apply where the injury arises out of a civil rights violation, Jackson v. Thomas, No. M2010-01242-COA-R3CV, 2011 WL 1049804, at *7 (Tenn. Ct. App. Mar. 23, 2011).

Plaintiffs have presented no sound arguments that would lead this Court to conclude that Fentress County has lost its immunity from suit on their state law claims. To the extent that Plaintiffs allege Sheriff Cravens' acts were intentional, "[t]here is no cause of action set forth in the GTLA to hold the [County] liable for [his] alleged intentional conduct." Partee v. City of Memphis, Tenn., 449 F. App'x 444, 447 (6th Cir. 2011); see also Joslin v. Metro Nashville/Davidson Cty., No. 3:12-CV-1284, 2013 WL 2250712, at *5 (M.D. Tenn. May 21, 2013) ("The TGTLA shields Metro Nashville from vicarious liability for the defendant officers' alleged intentional torts"). To the extent Plaintiffs allege deputies ignored, overlooked or acquiesced in Sheriff Cravens' conduct, negligence does not abrogate immunity "where 'the same circumstances giv[e] rise' to both the negligence and civil rights claims." Id. (quoting Tenn. Code Ann. § 29-20-205(2)). Accordingly, Plaintiffs' state law claims will be dismissed.[2]

---

[2] In arriving at this conclusion, the Court recognizes that, in Limbaugh, the Tennessee Supreme Court held that, because "assault and battery" was not one of the intentional torts enumerated in Tenn. Code Ann. § 29-20-205(2), the TGTLA does not exempt governmental entities from liability for assault and battery. However, Liimbaugh is inapplicable because there was no allegation of a civil rights violation in that case. See Branum v. Loudon Cty., Tenn., No. 3:11-CV-351-TAV-CCS, 2014 WL 640634, at *12 (E.D. Tenn. Feb. 19, 2014) (discussing Limbaugh but finding that county was immune from suit on claims of assault and battery and the intentional infliction of emotional distress because they arose "in the context of a civil rights case"); Rowland v. City of Memphis, No. 2:13-CV-02040-JPM, 2013 WL 2147457, at *11 (W.D. Tenn. May 15, 2013) (holding that Limbaugh does not apply where the assault and battery is also a part of the civil rights violation); Keys v. City of Chattanooga, No. 1:08-CV-204, 2009 WL 2244615, at *4 (E.D. Tenn. July 27, 2009) (noting that the "GTLA restores municipal immunity for civil rights claims" and dismissing state law assault and battery claim on that basis notwithstanding Limbaugh). Regardless, there is no allegation in this case that a Fentress County Deputy assaulted Plaintiffs. Insofar as Sheriff Cravens is alleged to have assaulted them, the allegations make plain that he was the final policymaker at the Fentress County Jail, and those allegations are the very core of their civil rights claim.

10

## II. Conclusion

On the basis of the foregoing, the Motion to Dismiss filed by Fentress County will be granted with respect to Plaintiffs' state law claims, but denied with respect to their federal claims.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE